## RELEASE, CONFIDENTIALITY, NON-DISPARAGEMENT AND

## INDEMNIFICATION AGREEMENT

This Receipt, Release, Hold Harmless, Defense, Confidentiality and Indemnification Agreement (**the "Agreement"**) is made and entered into this 15th day of January, 2026 by and between:

"Plaintiff"           **Kortne Gosha**

"Defendants"          **Michael Johnson and Couth Consulting LLC ("Couth")**

"Parties"             **Plaintiffs and Defendants are sometimes collectively referred to herein as the "Parties."**

### Recitals

I.      Plaintiff previously filed a civil action in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, captioned *Kortne Gosha v. Michael Johnson and Couth Consulting, LLC*, Case No. 25-002463-CI. Defendant Michael Johnson thereafter removed the action to the United States District Court for the Middle District of Florida, where it is presently captioned *Gosha v. Johnson et al.*, No. 8:25-cv-02187-SDM-CPT (M.D. Fla.) (collectively, the "Lawsuit").

II.     Without admitting any liability, fault, or wrongdoing, and solely in order to avoid the burden, expense, uncertainty, and distraction of continued litigation, including but not limited to attorneys' fees, costs, and related expenses, Plaintiff and Defendants desire to resolve and settle fully and finally all claims, disputes, controversies, and matters of any kind that were asserted, could have been asserted, or are in any way related to or arising out of the Lawsuit, the Parties' prior business dealings, personal relationship, or any events or transactions occurring prior to the execution of this Agreement. Accordingly, the Parties enter into this Agreement as a good-faith compromise, which fully and finally discharges and releases Plaintiff and Defendants, and each of them, from any and all claims and causes of action, whether known or unknown, suspected or unsuspected, subject to the terms and conditions set forth below.

### Agreement

In reliance upon the foregoing, the Parties agree as follows:

1.0    **Release and Discharge**

1.1    In consideration of the covenants set forth herein, Plaintiff and Defendants hereby release and forever discharge each other of and from any and all liability for any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, expenses and compensation of any nature whatsoever, whether based on a tort, contract, extra-contractual/bad faith, statute, or any other theory of recovery, which the Parties now have, individually or on behalf of any other entity, or which may hereafter accrue or otherwise be acquired, on account of, or which may in any way relate to or arise from the Parties' business and/or personal relationships with each other    , including, without limitation, any and all known or unknown claims, whether asserted or unasserted, for bodily and personal injuries, pain and suffering, mental anguish, punitive damages, loss of enjoyment of life, loss of consortium, and/or property damage; claims to assets including without limitation claims to real property, business interests, life insurance policies, and any financial accounts; any bad faith claim, construction defect and/or damage claim, property damage claim, breach of contract claim, extra-contractual claim, claim for attorney's fees; and/or any and all other claims and/or causes of action which have resulted or may result from the alleged acts or omissions of Plaintiff or Defendants.

1.2    These releases and discharges shall apply to each Party's past, present and future members, managers, business entities, including tradenames and/or "doing business as" names, insurer(s), administrators, claim service and underwriting service managers, executives, third party administrators, business units, independent contractors, contractors, subcontractors, lessees, lessors, assigns, subrogates, shareholders, franchisees, servants, underwriters, affiliates, principals, owners, reinsurers, underwriters, adjusters, officers, directors, stockholders, attorneys, agents, servants, representatives, employees, parent companies, subsidiaries, affiliates, partners, heirs, predecessors and successors in interest, and assigns and all other persons, firms or corporations with whom any of the former have been, are now, or may hereafter be affiliated. The parties released and discharged pursuant to Sections 1.1 and 1.2 are hereafter collectively referred to as the **"Released Parties."**

1.3    Plaintiff and Defendants acknowledge and agree that the release and discharge set forth above is a general release.  The Parties expressly waive and assume the risk of any and all claims for damages which exist as of this date, but of which the Parties do not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect each Parties' decision to enter into this Agreement. The Parties each further agree that this is a

complete compromise of matters involving disputed issues of law and fact.  The Parties each assume the risk that the facts or law may be other than what they believe.

1.4     It is understood and agreed that this Agreement represents the settlement and compromise of all disputed claims, and the Parties expressly agree and acknowledge that by entering into this Agreement, no Party hereto admits or acknowledges any liability, obligation, or wrongdoing on its part. Each Party expressly denies any and all liability with respect to this litigation or the facts underlying the litigation.

1.5     This release and discharge, on the part of the Parties, shall be a fully binding and complete settlement by the Parties.

2.0     **Indemnity**

2.1     Plaintiff shall indemnify, defend, and hold harmless Couth from and against any and all third party claims, losses, damages, liabilities, obligations, fines, penalties, judgments, costs, and expenses (including reasonable attorneys' fees and costs) arising out of or relating to Plaintiff's actions as a manager of Couth.

2.2     Couth shall indemnify, defend, and hold harmless Plaintiff from and against any and all third party claims, losses, damages, liabilities, obligations, fines, penalties, judgments, costs, and expenses (including reasonable attorneys' fees and costs) arising out of or relating to Couth's actions, except as provided in paragraph 2.1 above.

2.3     The Parties shall be entitled to plead this obligation and this release in defense of any such claim.

**3.0     Property of the Parties**

3.1     With respect to the 2021 Mercedes-Benz GLE350W, VIN 4JGFB4JB4MA331199 (the "Vehicle"), Plaintiff agrees to, within forty-five (45) days, either: (a) fully refinance the Vehicle solely in Plaintiff's name; or (b) pay off the loan on the Vehicle in full. Upon payoff or refinancing, Couth shall be removed from the Vehicle's title.

3.2     In the event Plaintiff cannot pay off or refinance the Vehicle within the time prescribed by Section 3.1, Plaintiff shall surrender possession and control of the Vehicle at the expiration of that time period to Couth.

Docusign Envelope ID: 1ABD8722-52EA-4A7E-8954-95CB1566B4DB

3.3     Within five (5) business days following the execution of this Agreement, Defendants, at their cost, shall ship to Plaintiff's counsel by insured commercial carrier the MacBook laptop computer purchased by Plaintiff (the "Laptop"). Prior to shipping the Laptop as provided herein, Defendants shall preserve the Laptop and all contents in the same working condition as of the date of this Agreement. Defendants shall not access, alter, copy, or otherwise monitor the Laptop. Defendants shall provide to Plaintiff's counsel the carrier name and tracking information for the shipment within twenty-four (24) hours of shipment.

Defendants hereby agree that they have not backed up or copied any information off the Laptop and that they have not ever and will not in the future disseminate any information contained on the Laptop. Nothing in this Agreement shall be construed as an admission of wrongdoing or liability by Defendants.

The Parties hereby acknowledge and agree that, upon shipment of the Laptop, Defendants shall have no further access to, control over, responsibility for, or ability to access the Laptop, its contents, any software or applications thereon, or any accounts associated with the Laptop.

Defendants' obligations under this provision shall be deemed fully satisfied upon submitting to Plaintiff's counsel proof that Defendants surrendered the Laptop to an insured commercial carrier for shipment within the time required by this Section.

3.6     The Parties expressly acknowledge and agree that all obligations set forth in this Section 3 are material inducements to the Parties' agreement to enter into this Agreement. The Parties agree to cooperate in good faith to take any actions reasonably required to effectuate the transfer of title, refinancing, payoff, sale, or accounting, related to the Vehicle as required for compliance with Sections 3.1 and 3.2 above, and neither Party shall take any action to unreasonably delay, obstruct, or interfere with another Party's efforts to comply with Sections 3.1 and 3.2. Failure to cooperate in good faith as set forth herein shall constitute a material breach of this Agreement. Any failure by either Party to strictly comply with any Section 3 Obligation shall constitute a material breach of this Agreement and default.

Time is of the essence with respect to all Section 3 Obligations. No notice, demand, or opportunity to cure shall be required prior to enforcement of this Section 3, except where expressly stated otherwise in this Agreement.

Docusign Envelope ID: 1ABD8722-52FA-4A7E-8954-95CB1566B4DB

4.0    **Attorney's Fees**

4.1    The Parties shall be responsible for any taxes that may be owed and/or their attorneys' fees and expenses, arising from the actions of their own counsel in connection with the claims, this Agreement and the matters and documents referred to herein, and all related matters.

4.2    In the event that a party breaches this Agreement, the non-breaching party is entitled to recover reasonable attorneys' fees and costs for the litigation or defense of any claim or lawsuit arising out of such breach.

5.0    **Representation of Comprehension of Document**

5.1    In entering into this Agreement, the Parties represent that they have relied upon the advice of their attorney(s), who is/are the attorney(s) of their own choice, concerning the legal and other consequences of this Agreement; that the terms of this Agreement have been completely explained to the Parties by their attorney(s); and that the terms of this Agreement are fully understood and voluntarily accepted by the Parties.

5.2    This Agreement was negotiated at arm's length between persons represented by attorneys all of whom are knowledgeable in the matters addressed herein; thus, the Agreement should be interpreted in a reasonable manner to effectuate the intentions of the Parties and shall not be construed against the drafter(s).

6.0    **Governing Law and Choice of Forum**

6.1    This Agreement shall be construed and interpreted in accordance with the laws of the State of Florida.

7.0    **Letter of Misunderstanding**

7.1    Plaintiff shall, within five (5) business days of execution of this Agreement, execute and return a letter of misunderstanding  stating

"To whom it may concern:

The allegations of wrongdoing in the lawsuit I filed against Couth and Mr. Johnson (including but not limited to paragraphs 16 and 17) in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, Case No. 25-002463-CI, which was removed to the United States District

Court for the Middle District of Florida, Tampa Division, Cas. No. 8:25-cv-2187, were based upon a misunderstanding. The cases have been dismissed."

Plaintiff agrees that the letter of misunderstanding may be used by Defendants for reputational, professional, or legal clarification purposes, including submission to employers, lenders, or other third parties, without further consent from Plaintiff. Nothing in this Section or the Agreement shall be construed to authorize Defendants to use any other past statements, communications, or documents by Plaintiff for any purpose.

8.0    **Entire Agreement and Successors in Interest**

8.1    The Parties declare and represent that no promise, inducement or agreement not herein expressed has been made, and that this Agreement contains the entire agreement between the Parties with regard to the matters set forth in it and shall be binding upon and inure to the benefit of the executors, administrators, personal representatives, heirs, successors and assigns of each. The Parties further declare and represent that the terms of this Agreement are contractual and not mere recital.

9.0    **Confidentiality and Non-Disparagement**

9.1    The Parties additionally accept the covenants set forth herein as consideration for the following additional terms:

- o **Confidentiality.** The Parties and their attorneys agree to strict confidentiality and that they will not use nor disclose the following: (1) this Agreement, including all of its terms, (2) the fact of settlement, settlement amount, any prior offers, and negotiations leading up to this Agreement, (3) identity of the Parties to this Agreement, and/or (4) facts giving rise to this Agreement that could identify any Released Parties, and (5) medical history; medical conditions; mental health information; diagnoses; treatment; prescriptions; personal information, including without limitation personal financial matters, prior personal or professional relationships, sexual preferences and orientation, private conduct, use of social media or dating applications, or other identifying information; videos; photos; social security numbers;and banking information obtained by the Parties during their business and personal relationship, (hereinafter collectively referred to as "Confidential Information"). For avoidance of doubt, each Party expressly agrees that it shall not disclose, discuss, speculate about,

characterize, or imply—publicly or privately—any alleged or actual medical, psychological, or mental health condition of any other Party, whether past, present, or future, regardless of the source or manner in which such information was obtained. Any such disclosure or discussion shall constitute a material breach of this Agreement. The Parties shall not, unless required by law, disclose any Confidential Information to anyone but their attorneys, governmental entities, and tax advisors, provided that any private entity or individual receiving such information first agrees in writing to be bound by the confidentiality obligations set forth in this section. By execution of this Agreement, the Parties direct their attorneys to adhere to the terms of this section, which is independent of all other sections of this Agreement. The obligations set forth in this section shall survive execution and performance of this Agreement. All other provisions of this Agreement shall remain in full force and effect, notwithstanding any breach of this section.  Nothing in this Agreement is intended to nor does it restrict or limit cooperation with or provision of information to any federal, state or local government agency, provided that such cooperation does not include voluntary disclosure of Confidential Information beyond what is legally required. Any violation of this section shall constitute a material breach of the Agreement. By signing below, Plaintiff and Defendants certify that they are in possession of any Confidential Information (including any such information in an electronic format) regarding the other Party, or to the extent any such Confidential Information exists, that it has been permanently deleted or destroyed and is no longer accessible, retrievable, or recoverable. The Parties further agree that they shall have no direct or indirect contact with each other, nor engage in any monitoring, tracking, surveillance, or attempts to access another Party's devices, accounts, communications, or data, whether personally or through any third party, except as expressly required to perform obligations under this Agreement.

o **Non-Disparagement.** The Parties and their attorneys agree that they will not take any action or make any statements, verbal, electronic, or written, to any third-party that directly or indirectly, disparages, defames, libels, damages, slanders or portrays in a negative light, any other party or their respective businesses.  This prohibition includes, without limitation, statements or communications made to employers, prospective employers, universities, athletic departments, conferences, professional organizations,

regulatory or governmental bodies, media outlets, on social media platforms, through intermediaries, or framed as opinion, belief, or "background" information. By execution of this Agreement, the Parties also direct their attorneys to adhere to terms as stated in this Non-Disparagement Provision, and the Parties shall be responsible for ensuring compliance by any agent, representative, or person acting at their direction or on their behalf, specifically with regard to the Incident and the Lawsuit. For avoidance of doubt, the Parties agree that the truth or alleged truth of a statement shall not constitute a defense to a breach of this Non-Disparagement provision, and that silence shall be required where a response would reasonably be expected to disparage the other Party. Any violation of this Non-Disparagement provision by a Party shall constitute a material breach of this Agreement and shall entitle the non-breaching Party to all remedies available at law or in equity, including injunctive relief, specific performance, recovery of attorneys' fees and costs, and any liquidated damages provided elsewhere in this Agreement. Unauthorized third-party statements shall not constitute a breach of this provision. Hearsay, rumor, gossip, anonymous, or second-hand statements shall not constitute a breach of this provision unless it is established by clear and convincing evidence that a Party was the original source of the disseminated statement or authorized its dissemination. The Parties acknowledge that the non-disparagement and confidentiality obligations detailed in this Section commenced on the 15th day of January 2026, shall survive execution and performance of this Agreement, and shall continue indefinitely unless expressly terminated in writing by the Parties.

o **Subpoenas.** In the event of any subpoena, court order, governmental inquiry, employer inquiry, regulatory request, or other third-party request (formal or informal) seeking or purporting to require access to this Agreement or any information regarding its existence or terms, including inquiries framed as background checks, compliance reviews, or informal requests for information, the Parties agree to notify each other in writing immediately upon receipt of such subpoena, court order, or request and to promptly provide each other with a complete copy thereof. The Parties further agree to use their best efforts, jointly and in good faith, to obtain an appropriate protective order, stay of disclosure, motion to quash, or other available remedy in order to provide a reasonable opportunity for the affected Party to take action to prevent or limit disclosure of this Agreement or any information relating to it. No Party shall voluntarily

produce, disclose, describe, characterize, or summarize this Agreement or its terms in response to any such request unless and until required to do so by a final, non-appealable order of a court of competent jurisdiction, and only to the minimum extent legally required. Any disclosure made pursuant to legal compulsion shall be narrowly tailored, made under seal where available, and preceded by reasonable advance notice sufficient to allow the other Party to seek judicial or administrative relief. The Parties agree to otherwise cooperate fully in good faith in all reasonable efforts to preserve the confidentiality of this Agreement and to minimize the scope, content, and audience of any compelled disclosure.

o **Penalties.** Any breach of the provisions contained in this Section shall be subject to non-exclusive liquidated damages, recoverable by the non-breaching party without proof of actual damages, as follows: For any breach involving a statement, communication, or disclosure made to a limited audience, liquidated damages shall be Twenty-Five Thousand Dollars ($25,000) per breach. Each discrete statement, disclosure, communication, or act shall constitute a separate and independent breach.

o The Parties expressly acknowledge and agree that: (i) the harm caused by a breach of this Section 10 would be difficult or impossible to quantify with precision at the time of contracting; (ii) the liquidated damages amounts set forth herein represent a reasonable estimate of anticipated damages and are not intended as a penalty; and (iii) these provisions are a material inducement to the Parties' agreement to enter into this Agreement.

o Payment of liquidated damages shall not preclude the non-breaching party from seeking injunctive relief, specific performance, attorneys' fees and costs, or any other legal or equitable remedies available under this Agreement or applicable law.

o The Parties agree that monetary damages may be insufficient to remedy a breach of this Section, and that the non-breaching party shall be entitled to injunctive relief, specific performance, and equitable remedies in addition to liquidated damages. Truth or alleged truth shall not be a defense to breach of this provision.

10.0    **Effectiveness**

10.1    This Agreement shall become effective immediately upon execution by the Parties.

11.0    **Severability**

11.1    If any part of this Agreement is determined by a court to be invalid or unenforceable, such ruling shall not affect the validity or enforceability of other parts of this Agreement, provided that the release, dismissal, defense, and indemnification provisions herein are still enforceable.

AGREED TO this ___ th day of February, 2026 by:

Signed by:

*Dr. Michael Johnson, Jr.*

CA2A19E9D02347B...

**MICHAEL JOHNSON, individually, and in his capacity as as member-manager of COUTH CONSULTING, LLC**

_____

**KORTNE GOSHA**

11.0     **Severability**

11.1     If any part of this Agreement is determined by a court to be invalid or unenforceable, such ruling shall not affect the validity or enforceability of other parts of this Agreement, provided that the release, dismissal, defense, and indemnification provisions herein are still enforceable.

AGREED TO this ___ th day of February, 2026 by:

_____
**MICHAEL JOHNSON, individually, and in his capacity as as member-manager of COUTH CONSULTING, LLC**

DocuSigned by:

*kortne Gosha*

D0B0E267B00A472... _____
**KORTNE GOSHA**